IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KEYSTONE TUBE COMPANY, LLC,[1] et al., | Case No. 17-11330 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF GENERAL UNSECURED CREDITORS AND (II) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (the "Motion") for entry of interim and final orders (i) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, allowed prepetition claims (collectively, the "Trade Claims") of general unsecured creditors that provide goods or services related to the Debtors' operations (collectively, the "Trade Creditors"); and (ii) authorizing applicable banks and financial institutions (collectively, the "Banks") to receive, honor, process, and pay all checks issued or to be issued and electronic funds transfers requested or to be requested relating to the above.

1.    The Debtors also request authority to condition the payment of Trade Claims upon the respective Trade Creditor's agreement to maintain or reinstate contract terms during the pendency of these chapter 11 cases that are at least as favorable as the most favorable

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Keystone Tube Company, LLC (8746); A.M. Castle & Co. (9160); HY-Alloy Steels Company (9160); Keystone Services, Inc. (9160); and Total Plastics, Inc. (3149). The location of the Debtors' headquarters and service address is 1420 Kensington Road, Suite 220, Oak Brook, IL 60523.

trade terms existing in the six (6) months before the Petition Date or such other trade terms acceptable to the Debtors (the "Customary Trade Terms").

2.      A proposed form of order granting the relief requested on an interim basis (the "Proposed Interim Order") is annexed hereto as **Exhibit A**. A proposed form of order granting the relief requested on a final basis (the "Proposed Final Order" and together with the Proposed Interim Order, the "Proposed Orders") is annexed hereto as **Exhibit B**.

### Jurisdiction and Venue

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief sought herein are sections 105(a), 362(d), 363(b), and 503(b)(9) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

6.     On the date hereof (the "Petition Date"), the Debtors each filed with this

Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are

operating their businesses and managing their properties as debtors and debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     The factual background regarding the Debtors, including their current and

historical business operations and the events precipitating the chapter 11 filing, is set forth in

detail in the *Declaration of Patrick R. Anderson in Support of the Debtors' Chapter 11 Petitions*

*and Related Requests for Relief* (the "First Day Declaration")[2] filed concurrently herewith and

fully incorporated herein by reference.

## The Trade Creditors

8.     As set forth in greater detail in the First Day Declaration, the Debtors are a

specialty metals distribution company serving customers on a global basis.  The Debtors

provides a broad range of products and value-added processing and supply chain services to a

wide array of customers.  The Debtors' customers are principally within the producer durable

equipment, aerospace, heavy industrial equipment, industrial goods, construction equipment, oil

and gas, and retail sectors of the global economy. Particular focus is placed on the aerospace and

defense, power generation, mining, heavy industrial equipment, and general manufacturing

industries, as well as general engineering applications. To perform each of these services, the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day
Declaration.

Debtors require various specialized materials, tools, and equipment in addition to the customary

goods and services that are necessary to operate a business like the Debtors'.

9.    Through the Trade Creditors, the Debtors purchase specialty metals and

related processing services (heat treat, polish, straighten, etc.). The Debtors purchase goods and

services for the purpose of operating cranes, side-loaders, forklifts, scales, racks, saws, saw

blades, and repairs related to this and other equipment. The Debtors hire transportation providers

in connection with the shipping of their products and delivery of goods, including packing and

shipping materials, some of which are specialized. In addition, the Debtors purchase protective

and safety equipment to help ensure that their employees are working in a protected and safe

work environment. The Trade Creditors provide the Debtors with uninterrupted access to the

necessary goods and services that enable them to operate their businesses smoothly.

## The Trade Claims

10.    The Debtors incur numerous fixed, liquidated, and undisputed payment

obligations to the Trade Creditors in the ordinary course of business. For the six (6) months

before the Petition Date, the Debtors' average monthly payment to Trade Creditors was

approximately $28.2 million. The Debtors estimate that, as of the Petition Date, approximately

$27,500,000 of undisputed Trade Claims have accrued.

11.    The Debtors are not seeking to pay these amounts immediately or in one

lump sum; rather, the Debtors intend to pay these amounts as they become due and payable in

the ordinary course of the Debtors' business. As of the Petition Date, the Debtors have

approximately $2.8 million in cash on hand. Furthermore, concurrently with the filing of this

Motion, the Debtors have filed a motion seeking authorization to use cash collateral (the "Cash Collateral Motion"), which will provide the necessary additional liquidity for the Debtors to continue operations in the ordinary course of business.

## Conditions on Authority to Pay Trade Claims in the Ordinary Course

12.    The Debtors request authority to pay the Trade Claims on the condition that, by accepting payment, the Trade Creditor agrees to maintain or reinstate Customary Trade Terms. The Debtors also propose that if a Trade Creditor, after receiving a payment on account of its Trade Claim, does not maintain or reinstate Customary Trade Terms during the pendency of these chapter 11 cases, then any payments made on account of the Trade Claim to such Trade Creditor after the Petition Date may, in the Debtors' sole discretion, either be deemed applied to postpetition amounts payable to such Trade Creditor or treated as an unauthorized postpetition transfer recoverable by the Debtors.

## Treatment of Trade Claims Under the Prepackaged Plan

13.    The goal of these prepackaged chapter 11 cases is to deleverage the Debtors' balance sheet with minimal interruption of their business operations. Disrupting the flow of necessary goods and services could hamper the Debtors' ability to operate their businesses and supply products to their customers, which would damage their leading market reputation and possibly adversely affect their relationship with customers and the Trade Creditors. To avoid this scenario, it is imperative that the Debtors maintain positive relationships with their Trade Creditors, who are essential to the Debtors' business operations, throughout the course of these chapter 11 cases. The Debtors negotiated the terms of their prepackaged plan

with this goal in mind: under the prepackaged plan, the legal, equitable, and contractual rights of

holders of administrative expense claims, priority tax claims, priority non-tax claims, other

secured claims, and general unsecured claims (consisting of the Trade Claims that are the subject

of this Motion) will be unaltered. Moreover, as more fully described in the First Day Declaration,

the prepackaged plan is supported by the requisite majority of creditors in amount in the only

creditor classes that are impaired under the prepackaged plan. Accordingly, the relief requested

in this Motion furthers the Debtors' overarching restructuring goals without prejudice to the

Debtors' stakeholders.

### Basis for Relief Requested

A.    **Payment of Trade Claims Is Warranted**
      **Under Sections 363(b) and 105(a) of the Bankruptcy Code**

14.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that the

debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate." To approve the use of assets outside the ordinary course of

business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor

"show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding*

*Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel*

*Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case

No. 02-41729, 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003); *In re Lionel Corp.*,

722 F.2d 1063, 1071 (2d Cir. 1983). Moreover, "[w]here the debtor articulates a reasonable basis

for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts

will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60

B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

15.    In addition to being justified under section 363(b)(1) of the Bankruptcy Code, payment of the Trade Claims is warranted under the corollary doctrine of necessity. Section 105(a) of the Bankruptcy Code provides that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a) and the doctrine of necessity, the bankruptcy court may exercise its broad grant of equitable powers to permit the payment of prepetition obligations when such payment is essential to the continued operation of the debtor's business. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

16.    Bankruptcy courts regularly rely on their authority under section 105(a) and the doctrine of necessity to grant debtors the discretionary authority to pay certain prepetition claims "where the payment is necessary to permit the effectuation of the

rehabilitative purposes of the Bankruptcy Code." *In re Sharon Steel Corp.*, 159 B.R. 730, 736 (Bankr. W.D. Penn. 1993); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition claims and explaining that the "ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"). The rationale for making payments to prepetition creditors under the doctrine of necessity is consistent with the paramount goal of chapter 11: "the continued operation and rehabilitation of the debtor . . . ." *Ionosphere Clubs*, 98 B.R. at 176. To that end, approval of such payments benefits, rather than harms, the Debtors' other creditors. *See, e.g.*, *Sharon Steel*, 159 B.R. at 737 (approving payments of certain prepetition wages under the doctrine of necessity where doing so would maximize the value of the Debtors' assets and noting that payments made pursuant to the doctrine of necessity "must not only be in the best interest of the debtor but also in the best interest of its other creditors"). Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."

17.    It is a sound exercise of the Debtors' business judgment to pay the Trade Claims as they become due in the ordinary course of business because doing so will avoid value-destructive business interruption. The goods and services provided by Trade Creditors are necessary for the continued operation of the Debtors' businesses. The Debtors anticipate that

failure to pay the Trade Claims as they become due is likely to result in the Trade Creditors refusing to provide essential goods and services and/or conditioning the delivery of such goods and services on compliance with onerous and commercially unreasonable terms. A Trade Creditor's nonperformance could materially disrupt the Debtors' operation of their businesses and jeopardize the continued viability of the Debtors' businesses as well as their restructuring efforts. Such disruptions would ultimately be to the detriment of the Debtors' stakeholders.

18.    In addition, because the Trade Creditors are already familiar with the Debtors' assets and business needs through long-standing relationships, they are in the best position to provide the necessary goods and services to the Debtors, and are the most likely to do so on commercially reasonable terms. Forcing the Debtors to obtain replacement goods and services would likely cause substantial delay and significant costs.

19.    Delaying payments to the Trade Creditors could prevent the Debtors from obtaining goods and services that are essential to their continued performance under customer contracts, and could erode their reputation among customers. In a worst case scenario, nonperformance may lead to termination of customer contracts, resulting in substantial damage to the Debtors' businesses and injuring the Debtors and their respective estates and creditors. The relief requested in this Motion is immediately necessary on an interim basis to avoid irreparable harm to the Debtors, their estates, and their creditors.

20.    Authority to pay the Trade Claims as they come due will assist the smooth transition into and out of these chapter 11 cases and will ensure the Debtors' continued operation during the intervening period. Moreover, no party in interest will be prejudiced by the relief

requested herein because the Trade Claims are unimpaired under the Prepackaged Plan and will be paid in full upon the effective date of the Prepackaged Plan. Thus, the relief requested herein seeks to alter only the timing, not the amount or priority, of such payments. Accordingly, paying the relatively modest amount of Trade Claims— eight percent (8%) of the total debt to be restructured in these chapter 11 cases—in the ordinary course is prudent when compared to the amount the Debtors' stakeholders stand to lose if the Debtors' businesses were to be interrupted. In light of the foregoing, payment of the Trade Claims as provided herein, is a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, is in the best interests of the Debtors' and their respective estates and creditors, and is warranted under the circumstances.

21.     Courts in this district have authorized payment of prepetition general unsecured claims in the ordinary course of business where a debtor's proposed prepackaged plan of reorganization provides for a 100% recovery on general unsecured claims. *See, e.g., In re Basic Energy Services, Inc.*, Case No. 16-12320 (KJC) Bankr. D. Del. Nov. 17, 2016); *In re Seventy Seven Fin. Inc.*, Case No. 16-11409 (LSS) (Bankr. D. Del. June 28, 2016); *In re Offshore Grp. Inv. Ltd.*, Case No. 15-12422 (BLS) (Bankr. D. Del. Jan. 5, 2016); *In re Hercules Offshore, Inc.*, Case No. 15-11685 (KJC) (Bankr. D. Del. Sept. 15, 2015); *In re Everyware Global, Inc.*, Case No. 15-10743 (LSS) (Bankr. D. Del. Apr. 22, 2015); *In re Dolan Co.*, Case No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re Sorenson Commc'ns, Inc.*, Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014).

**B.**     **Additional Bases for Payment of Certain Trade Claims**

        *i.*     *Certain Trade Claims Are Administrative Expenses*

22.     An aggregate amount of approximately $22,000,000, roughly 80% of the

Trade Claims, is entitled to the statutory priority for goods delivered to the Debtors in the

ordinary course of business within 20 days before the Petition Date. Section 503(b)(9) of the

Bankruptcy Code provides that such claims are administrative expense claims against the

applicable Debtor's estate. *See* 11 U.S.C. § 503(b)(9). The Debtors, therefore, are required to pay

such claims in full to confirm a plan of reorganization. *See* § 1129(a)(9)(A) (requiring payment

in full of claims entitled to administrative expense priority). Instead of paying such Trade Claims

on the effective date of the prepackaged plan, the Debtors seek authority to pay the Trade Claims

during the pendency of these chapter 11 cases as they become due.

23.     The Bankruptcy Code requires, and the prepackaged plan provides for,

payment in full of administrative expense claims on the effective date of the Prepackaged Plan,

or as soon as practicable thereafter. Thus, payment of Trade Claims entitled to priority under

section 503(b)(9) under the Proposed Orders will effect only a change in the timing of such

payments, not the amounts or priority thereof. Finally, authorizing the Debtors to pay Trade

Claims pursuant to the terms set forth herein should eliminate the burden on this Court and the

Debtors arising from numerous individual motions requesting payment on account of 503(b)(9)

claims.

### ii.    *Certain Trade Claims May Be Secured by Liens*

24.    Certain Trade Claims are held by Trade Creditors that (i) provide

shipping, warehousing, and logistics services and supplies; (ii) repair and maintain the Debtors'

equipment and facilities; or (iii) lease facilities or equipment to the Debtors. Such Trade

Creditors may be entitled to assert liens against certain of the Debtors' assets under various state

and federal laws. Under section 363(e) of the Bankruptcy Code, Trade Creditors with liens may

be entitled to adequate protection of their liens, which may impose additional costs on the

Debtors' estates. Furthermore, under the Prepackaged Plan, Trade Claims supported by liens are

"other secured claims" that are unimpaired and will be paid in full on the effective date of the

Prepackaged Plan.

### Applicable Banks Should be Authorized to Receive, Process, Honor and Pay Checks Issued and Transfers Requested to Pay the Trade Claims

25.    The Debtors further request that the Court authorize the Banks to receive,

process, honor and pay, to the extent of funds on deposit, any and all checks issued or to be

issued and electronic funds transfers requested or to be requested by the Debtors relating to the

prepetition Trade Claims. The Debtors also seek authority, but not direction, to issue new

postpetition checks or effect new postpetition electronic funds transfers in replacement of any

checks or transfer requests on account of the prepetition Trade Claims dishonored or rejected as

a result of the commencement of the Debtors' chapter 11 cases.

### Bankruptcy Rule 6003 Has Been Satisfied

26.    Bankruptcy Rule 6003 provides that, to the extent relief is necessary to

avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion

to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a

motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one

(21) days after the Petition Date. Fed. R. Bankr. P. 6003. As described in the First Day

Declaration, the Debtors would suffer immediate and irreparable harm if the relief sought herein

is not promptly granted. Accordingly, the Debtors have satisfied the requirements of Bankruptcy

Rule 6003.

### Request for Bankruptcy Rule 6004 Waivers

27.    The Debtors request a waiver of the notice requirements under Bankruptcy

Rule 6004(a) and a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease

of property pursuant to Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(a), certain

interested parties must receive 21 days' notice by mail of the "proposed use, sale, or lease of

property of the estate other than in the ordinary course of business, unless the court for cause

shown shortens the time or directs another method of giving notice." Fed. R. Bankr. P.

2002(a)(2). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease

of property other than cash collateral is stayed until the expiration of 14 days after entry of the

order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As explained above and in

the First Day Declaration, the relief requested herein is necessary to avoid immediate and

irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the

notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by

Bankruptcy Rule 6004(h), to the extent such stay applies.

## Reservation of Rights

28.    Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (iv) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (v) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code.

## Notice

29.    The Debtors will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' largest 35 unsecured creditors (on a consolidated basis); (c) the Debtors' prepetition lenders; (d) counsel to the Ad Hoc Lender Committee; (e) counsel to SGF, Inc.; (f) the Prepetition First Lien Agent; (g) Shipman & Goodwin, as counsel to the First Lien Agent; and (g) the Prepetition Indenture Trustee. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m).   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Previous Request

30.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 18, 2017

PACHULSKI STANG ZIEHL & JONES LLP

Richard M. Pachulski (CA Bar No. 62337)
Jeffrey N. Pomerantz (CA Bar No.143717)
Maxim B. Litvak (CA Bar No. 215852)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box. 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: rpachulski@pszjlaw.com
        jpomerantz@pszjlaw.com
        mlitvak@pszjlaw.com
        pkeane@pszjlaw.com

Proposed Counsel for the Debtors
and Debtors-in-Possession