## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KEYSTONE TUBE COMPANY, LLC,[1] et al., | ) | Case No. 17-11330 (LSS) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 14** |

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING**

Upon the motion (the "Motion")[2] of Keystone Tube Company, LLC and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases"), pursuant to sections 105, 361, 362, 363, 503, and 507 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), seeking entry of this interim order (this "Interim Order") and a final order (the "Final Order") *inter alia*:

> (i)     authorizing the Debtors' use of Cash Collateral (as defined below);

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are: Keystone Tube Company, LLC (8746); A.M. Castle & Co. (9160); HY-Alloy Steels Company (9160); Keystone Service, Inc. (9160); and Total Plastics, Inc. (3149).  The location of the Debtors' headquarters and service address is 1420 Kensington Road, Suite 220, Oak Brook, IL 60523.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

(ii)    granting adequate protection to the Prepetition Agents and the Prepetition Secured Creditors for any Diminution in Value of their respective interests in the Prepetition Collateral (each as defined below), including the Cash Collateral;

(iii)    subject to entry of a Final Order and to the extent set forth herein, waiving the Debtors' right to surcharge the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code;

(iv)    vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors and the Prepetition Secured Creditors to implement and effectuate the terms and provisions of this Interim Order; and

(v)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order, and approving the form of notice with respect to the Final Hearing.

The Court (as defined below) having considered the Motion, the First Day Declaration, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held pursuant to Bankruptcy Rule 4001(b)(2) on June 20, 2017 (the "Interim Hearing"); and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED BY THE DEBTORS AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    *Petition Date*:  On June 18, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing these Cases.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

B.    _Debtors in Possession_.    The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    _Jurisdiction and Venue_.    The Court has jurisdiction over this matter, these proceedings, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue for these Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    _Committee_.    As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E.    _Debtors' Stipulations_.    After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as described in Paragraph 11 herein, the Debtors stipulate and agree that (collectively, Paragraphs E(i) through (v) below are referred to herein as the "Debtors' Stipulations"):

(i)    _First Lien Debt_.

(a)    First Lien Credit Agreement.    The First Lien Lenders (as defined below) extended certain credit facilities to A.M. Castle and Total Plastics, Inc. in the form of

term loans and delayed draw term loans (the "First Lien Facilities") pursuant to that certain Credit and Guaranty Agreement, dated as of December 8, 2016 (as amended, supplemented, or otherwise modified from time to time, the "First Lien Credit Agreement," and together with the other Credit Documents (as defined in the First Lien Credit Agreement), the "First Lien Credit Documents"), among A.M. Castle & Co. ("A.M. Castle") and Total Plastics, Inc., as borrowers, the remaining Debtors and certain of their non-Debtor affiliates, as guarantors, Cantor Fitzgerald Securities, as administrative and collateral agent (the "First Lien Agent"), and the lenders that are parties thereto from time to time (the "First Lien Lenders," and, together with the First Lien Agent, the "Prepetition First Lien Creditors"). As of the Petition Date, the Debtors were jointly and severally indebted to the Prepetition First Lien Creditors pursuant to the First Lien Credit Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $112,000,000 *plus* the Exit Fee (as defined in the First Lien Credit Agreement) *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the First Lien Credit Agreement) owing under or in connection with the First Lien Credit Documents (collectively, the "Prepetition First Lien Obligations").

(b)     First Lien Collateral.  In connection with the First Lien Credit Agreement, the Debtors entered into that certain Pledge and Security Agreement, dated as of December 8, 2016 (as amended, supplemented or otherwise modified from time to time, the "First Lien Security Agreement"), by and between A.M. Castle and the other Debtors, as grantors, and the First Lien Agent, as collateral agent for the First Lien Lenders.  Pursuant to the

4

First Lien Security Agreement and the other First Lien Credit Documents, the Prepetition First Lien Obligations are secured by valid, binding, perfected first-priority security interests in and liens on (the "Prepetition First Priority Liens") the "Collateral" (the "Prepetition First Lien Collateral"), as defined in the First Lien Credit Agreement and First Lien Security Agreement, including substantially all of the Debtors' assets, including cash (the "Cash Collateral"), in each case subject to certain exceptions as set forth in the First Lien Security Agreement.

      (ii)    *Second Lien Debt.*

      (a)    Second Lien Notes.  A.M. Castle issued 12.75% senior secured notes due 2018 (the "Second Lien Notes") pursuant to that certain Indenture, dated as of February 8, 2016 (as amended, supplemented, or otherwise modified from time to time, the "Second Lien Notes Indenture," and together with the other Notes Documents (as defined in the Second Lien Notes Indenture), the "Second Lien Notes Documents"), by and among A.M. Castle, as issuer, the remaining Debtors and certain of their non-Debtor affiliates, as guarantors, and U.S. Bank National Association, as indenture trustee and collateral agent (the "Second Lien Trustee," and together with the holders of the Second Lien Notes, the "Prepetition Second Lien Creditors").  As of the Petition Date, the Debtors were jointly and severally indebted to the Prepetition Second Lien Creditors pursuant to the Second Lien Notes Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $177,019,000 *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Second Lien Notes Indenture) owing under or in connection

DOCS_SF:94106.12 00251/001

with the Second Lien Notes Documents (collectively, the "Prepetition Second Lien Obligations").

(b)    Second Lien Collateral.  In connection with the Second Lien Notes Indenture, the Debtors entered into that certain Pledge and Security Agreement, dated as of February 8, 2016 (as amended, supplemented or otherwise modified from time to time, the "Second Lien Security Agreement"), by and between A.M. Castle and the other Debtors, as grantors, and the Second Lien Trustee, as collateral agent for the holders of Second Lien Notes. Pursuant to the Second Lien Security Agreement and the other Second Lien Notes Documents, the Prepetition Second Lien Obligations are secured by valid, binding, perfected second-priority security interests in and liens on (the "Prepetition Second Priority Liens") the "Collateral" (the "Prepetition Second Lien Collateral"), as defined in the Second Lien Security Agreement, including substantially all of the Debtors' assets, including the Cash Collateral, in each case subject to certain exceptions as set forth in the Second Lien Security Agreement.

(iii)    *Third Lien Debt.*

(a)    Convertible Notes.  A.M. Castle issued 5.25% convertible senior secured notes due 2019 (the "Third Lien Notes," and together with the First Lien Facilities and the Second Lien Notes, the "Prepetition Secured Debt") pursuant to that certain Indenture, dated as of May 19, 2016 (as amended, supplemented, or otherwise modified from time to time, the "Third Lien Notes Indenture," and together with the other Notes Documents (as defined in the Third Lien Notes Indenture), the "Third Lien Notes Documents"), by and among A.M. Castle, as issuer, the remaining Debtors and certain of their non-Debtor affiliates, as guarantors, and U.S. Bank National Association, as indenture trustee and collateral agent (the "Third Lien Trustee," and together with the holders of Third Lien Notes, the "Prepetition Third Lien Creditors"). As of

the Petition Date, the Debtors were jointly and severally indebted to the Prepetition Third Lien

Creditors pursuant to the Third Lien Notes Documents, without defense, counterclaim, or offset

of any kind, in the aggregate principal amount of $22,323,000 *plus* accrued and unpaid interest

with respect thereto and any additional fees, costs, expenses (including any attorneys', financial

advisors', and other professionals' fees and expenses), reimbursement obligations,

indemnification obligations, contingent obligations, and other charges of whatever nature,

whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined

in the Third Lien Notes Indenture) owing under or in connection with the Third Lien Notes

Documents (collectively, the "Prepetition Third Lien Obligations," and together with the

Prepetition First Lien Obligations and Prepetition Second Lien Obligations, the "Prepetition

Secured Obligations").    For purposes of this Interim Order: "Prepetition Agents" means,

collectively, the First Lien Agent, the Second Lien Trustee and the Third Lien Trustee;

"Prepetition Secured Creditors" means, collectively, the Prepetition First Lien Creditors, the

Prepetition Second Lien Creditors and the Prepetition Third Lien Creditors; and "Prepetition

Secured Debt Documents" means, collectively, the First Lien Credit Documents, the Second

Lien Notes Documents and the Third Lien Notes Documents.

        (b)     Third Lien Collateral.  In connection with the Third Lien Notes

Indenture, the Debtors entered into that certain Pledge and Security Agreement, dated as of May

19, 2016 (as amended, supplemented or otherwise modified from time to time, the "Third Lien

Security Agreement"), by and between A.M. Castle and the other Debtors, as grantors, and the

Third Lien Trustee, as collateral agent for the holders of Third Lien Notes.  Pursuant to the Third

Lien Security Agreement and the other Third Lien Notes Documents, the Prepetition Third Lien

Obligations are secured by valid, binding, perfected third-priority security interests in and liens

on (the "Prepetition Third Priority Liens," and together with the Prepetition First Priority Liens and Prepetition Second Priority Liens, the "Prepetition Liens") the "Collateral" (the "Prepetition Third Lien Collateral," and together with the Prepetition First Lien Collateral and Prepetition Second Lien Collateral, the "Prepetition Collateral"), as defined in the Third Lien Security Agreement, including substantially all of the Debtors' assets, including the Cash Collateral, in each case subject to certain exceptions as set forth in the Third Lien Security Agreement.

    (iv)   *Intercreditor Agreements.*

    (a)   Senior Intercreditor Agreement.  The First Lien Agent, Second Lien Trustee, and the Third Lien Trustee are parties to that certain Amended and Restated Intercreditor Agreement, dated as of February 8, 2016 (as amended, supplemented or otherwise modified from time to time, the "Senior Intercreditor Agreement").  The Senior Intercreditor Agreement, among other things, (A) confirms the senior priority of the security interests of the Prepetition First Lien Creditors in the assets and properties of the Debtors (including the Prepetition Collateral) to the junior priority security interests of the Prepetition Second Lien Creditors and Prepetition Third Lien Creditors, (B) provides that the Prepetition Second Lien Creditors and the Prepetition Third Lien Creditors shall be deemed to have consented to the use of Cash Collateral by the Debtors under certain circumstances, and (C) provides certain other rights and obligations between the Prepetition First Lien Creditors, on the one hand, and the Prepetition Second Lien Creditors and the Prepetition Third Lien Creditors, on the other hand, relating to the Prepetition Collateral.  The Senior Intercreditor Agreement is a "subordination agreement" within the meaning of Section 510(a) of the Bankruptcy Code.

    (b)   Junior Intercreditor Agreement.  The Second Lien Trustee and the Third Lien Trustee are parties to that certain Junior Lien Intercreditor Agreement, dated as of

May 19, 2016 (as amended, supplemented or otherwise modified from time to time, the "Junior Intercreditor Agreement," and together with the Senior Intercreditor Agreement, the "Intercreditor Agreements"). The Junior Intercreditor Agreement, among other things, (A) confirms the senior priority of the security interests of the Prepetition Second Lien Creditors in the assets and properties of the Debtors (including the Prepetition Collateral) vis-à-vis the junior priority security interests of the Prepetition Third Lien Creditors, (B) provides that the Prepetition Third Lien Creditors shall be deemed to have consented to the use of Cash Collateral by the Debtors under certain circumstances, and (C) provides certain other rights and obligations between the Prepetition Second Lien Creditors and the Prepetition Third Lien Creditors relating to the Prepetition Collateral. The Junior Intercreditor Agreement is a "subordination agreement" within the meaning of Section 510(a) of the Bankruptcy Code.

(v)     *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Secured Obligations.* Each of the Debtors acknowledges and agrees that: (a) as of the Petition Date, the Prepetition Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) as of the Petition Date, the Prepetition First Priority Liens are senior in priority over any and all other liens on the Prepetition Collateral; (c) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), counterclaims, or

cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Prepetition Secured Debt Documents, the Prepetition Secured Obligations, or the Prepetition Liens.

F.    *Adequate Protection*.    To protect such parties' interests in the Prepetition Collateral, the Prepetition Secured Creditors are entitled to receive adequate protection for any diminution in value of their interests in the Prepetition Collateral from and after the Petition Date resulting from, among other things, the use of Cash Collateral, the use, sale, lease, consumption, or disposition of Prepetition Collateral, or the imposition of the automatic stay (collectively the "Diminution in Value") pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Pursuant to sections 361, 363, 503(b) and 507(b) of the Bankruptcy Code, as adequate protection:  (i) the First Lien Agent, for the benefit of itself and the Prepetition First Lien Creditors, shall receive (a) the First Priority Adequate Protection Liens (as defined below), (b) the First Priority 507(b) Claim (as defined below), and (c) the First Lien Adequate Protection Payments (as defined below); (ii) the Second Lien Trustee shall receive, for the benefit of itself and the Prepetition Second Lien Creditors, (a) the Second Priority Adequate Protection Liens, and (b) the Second Priority 507(b) Claim; and (iii) the Third Lien Trustee shall receive, for the

benefit of itself and the Prepetition Third Lien Creditors, (a) the Third Priority Adequate Protection Liens, and (b) the Third Priority 507(b) Claim. The adequate protection provided herein and other benefits and privileges contained herein are necessary to protect the Prepetition Secured Creditors from any Diminution in Value of their interests in the Prepetition Collateral and obtain the consents and agreements contained herein, including that the adequate protection provided herein is subject and subordinate to the Carve Out (as defined below). Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) were negotiated in good faith, are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral. The Prepetition Secured Creditors reserve the right to seek additional adequate protection beyond the adequate protection provided in this Interim Order.

G.   *Sections 506(c) and 552(b)*.   In light of the Prepetition Secured Creditors' agreement to subordinate their liens and superpriority claims to the Carve Out and to permit the use of their Cash Collateral as set forth herein, the Prepetition Secured Creditors are entitled to the rights and benefits of section 552(b) of the Bankruptcy Code and (i) upon entry of the Final Order, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (ii) upon entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

H.   *Consent by Prepetition Secured Creditors*. The First Lien Agent (with the consent of the Prepetition First Lien Lenders) has consented to, conditioned on the entry of this Interim Order, the Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in this Interim Order, and the terms of the adequate protection provided for in this Interim Order,

including that the Adequate Protection Liens and 507(b) Claims are subject and subordinate only to the Carve Out, and pursuant to the Intercreditor Agreements, the Prepetition Second Lien Creditors and Prepetition Third Lien Creditors are deemed to have consented to entry of this Interim Order.

I.     *Necessity of Relief Requested*.    The ability of the Debtors to finance their operations and complete a successful chapter 11 reorganization requires continued use of Cash Collateral.  In the absence of the use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible and immediate and irreparable harm to the Debtors, their estates, and their creditors would occur.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course of business or to maintain their property without the use of Cash Collateral.  The relief requested in the Motion is therefore necessary for the continued operation of the Debtors' businesses and the preservation of their property.  The Prepetition First Lien Creditors and the Debtors have negotiated at arms'-length and in good faith regarding the Debtors' use of Cash Collateral to fund the continued operation of the Debtors' businesses during the Specified Period (as defined below).  Entry of this Interim Order is in the best interests of the Debtors and their estates.

J.     *Good Cause Shown; Best Interest*.    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Bankruptcy Rule 4001-2.  Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful reorganization.

DOCS_SF:94106.12 00251/001

K.    *Final Hearing*.  The Debtors will seek final approval of the relief requested in the Motion pursuant to a Final Order at the Final Hearing, notice of which will be provided in accordance with Paragraph 23 of this Interim Order.

L.    *Notice*.  In accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Bankruptcy Rules, adequate notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors.  The parties have made reasonable efforts to afford the best notice possible under the circumstances to permit the relief set forth in this Interim Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    Motion Granted.  The Motion is granted on an interim basis as set forth herein, and the use of Cash Collateral on an interim basis is authorized, subject to the terms of this Interim Order.

2.    Objections Overruled.  All objections to the Motion to the extent not withdrawn or resolved are overruled.  This Interim Order shall become effective immediately upon its entry.

3.    Authorization to Use Cash Collateral.

(a)    Specified Period.  Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use Cash Collateral in accordance with the Budget (as defined below) for the period (the "Specified Period") from the Petition Date through the date which is the earliest to occur of (i) the expiration of the Remedies Notice Period (as defined herein), (ii) the date that is 45 days from the Petition Date if the Court has not entered the Final Order on or before such date, and (iii) the date that is 6 months after the Petition Date.

(b)     Use of Cash Collateral.  Subject to the provisions of this Interim Order, including the Budget, Cash Collateral may be used during the Specified Period by the Debtors to: (i) finance their working capital needs and for any other general corporate purposes; and (ii) pay related transaction costs, fees, liabilities and expenses (including all professional fees and expenses) and other administration costs incurred in connection with and for the benefit of these Cases (including the First Lien Adequate Protection Payments), in each case solely to the extent consistent with the Budget.

4.     Adequate Protection.  The Prepetition Secured Creditors are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) to the extent of any Diminution in Value of their interests in the Prepetition Collateral (which, subject to entry of the Final Order, shall be valued as of the Petition Date on a going-concern basis) (such adequate protection as set forth in clauses (a)-(g) below, the "Adequate Protection Obligations").  The Prepetition Agents, in each case, on behalf of themselves and for the benefit of each of the respective Prepetition Secured Creditors for which they act as agent, are hereby granted, as applicable, to the extent of any Diminution in Value of their interests in the Prepetition Collateral from and after the Petition Date, the following:

(a)     Adequate Protection Liens.  As adequate protection of the interests of the Prepetition Secured Creditors in the Prepetition Collateral against any Diminution in Value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors are authorized to, and as of entry of this Interim Order are deemed to have granted, to the Prepetition Agents, for the benefit of themselves and each of the Prepetition Secured Creditors for which they act as agent, additional and replacement continuing, valid, binding, enforceable, non-

avoidable, and automatically perfected postpetition security interests in and liens on (together, the "Adequate Protection Liens") all of each Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, chattel paper, contracts, owned real estate, real and personal property leaseholds, property, plants, fixtures and machinery and equipment, vehicles, vessels, deposit accounts, cash and any investment thereof, letter of credit rights, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property and stock of subsidiaries of the Debtors, and the proceeds and products of the foregoing (collectively, together with the Prepetition Collateral and the Cash Collateral, the "Collateral"). The Collateral shall exclude only any avoidance actions under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law (the "Avoidance Actions"), but, subject only to and effective upon entry of the Final Order, the Collateral shall include any proceeds of property recovered, unencumbered or otherwise, on account of Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds"). The Adequate Protection Liens granted to the First Lien Agent, for the benefit of itself and the Prepetition First Lien Creditors (collectively, the "First Priority Adequate Protection Liens") shall be (i) subject and subordinate only to the Carve Out and any existing, valid, senior, enforceable, and unavoidable prior perfected security interests and liens other than the Prepetition Liens (the "Existing Liens"), and (ii) senior to the Prepetition Second Priority Liens, the Prepetition Third Priority Liens, and the Adequate Protection Liens granted to both the Second Lien Trustee, for the benefit of itself and the Prepetition Second Lien Creditors (the "Second Priority Adequate Protection Liens"), and the Adequate Protection Liens granted to the

DOCS_SF:94106.12 00251/001

Third Lien Trustee, for the benefit of itself and the Prepetition Third Lien Creditors (the "Third Priority Adequate Protection Liens"), as provided in and consistent with the Intercreditor Agreements. The Second Priority Adequate Protection Liens shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the First Priority Adequate Protection Liens, except that such Second Priority Adequate Protection Liens shall be junior and subordinate to the Carve Out, the Existing Liens, the Prepetition First Priority Liens and the First Priority Adequate Protection Liens, as provided in and consistent with the Intercreditor Agreements. The Third Priority Adequate Protection Liens shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the First Priority Adequate Protection Liens and the Second Priority Adequate Protection Liens under this Interim Order, except that such Third Priority Adequate Protection Liens shall be junior and subordinate to the Carve Out, the Existing Liens, the Prepetition First Priority Liens, the Prepetition Second Priority Liens, the First Priority Adequate Protection Liens and the Second Priority Adequate Protection Liens, as provided in and consistent with the Intercreditor Agreements. The Adequate Protection Liens shall secure the Prepetition Secured Obligations to the extent of any Diminution in Value of the Prepetition Secured Creditors' interests in the Prepetition Collateral from and after the Petition Date. The Adequate Protection Liens shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in these Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Cases"). Except as expressly provided herein (including with respect to the Carve Out), the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the

16

Cases or any Successor Cases, and the Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of these Cases or any Successor Cases, or upon the dismissal of any of these Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code and, if approved in the Final Order, the Adequate Protection Liens shall not be subject to section 506(c) of the Bankruptcy Code. The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment, or avoidance, for all purposes in these Cases and any Successor Cases. For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtors, or the filing of, as applicable, mortgages, security agreements, pledge agreements, financing statements, state or federal notices, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office), or other agreements and without the necessity of taking possession or control of any Prepetition Collateral. Except as otherwise expressly provided herein, under no circumstances shall the Adequate Protection Liens be made subordinate to the lien of any other party, no matter when arising.

(b)     Adequate Protection Superpriority Claim.    To the extent of any Diminution in Value of the interests of the Prepetition Secured Creditors in the Prepetition Collateral, each of the Prepetition Agents, on behalf of themselves and the applicable Prepetition Secured Creditors for which they act as agent, shall be granted, subject only to the payment of the Carve Out, an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (collectively, the "507(b) Claims"), which 507(b) Claims shall be an allowed claim against each of the Debtors (jointly and severally), with

17

priority over any and all administrative expenses and all other claims against the Debtors now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. The 507(b) Claim granted to the First Lien Agent, for the benefit of itself and the Prepetition First Lien Creditors (collectively, the "First Priority 507(b) Claim"), shall be senior to the 507(b) Claim granted to both the Second Lien Trustee, for the benefit of itself and the Prepetition Second Lien Creditors (the "Second Priority 507(b) Claim"), and the Third Lien Trustee, for the benefit of itself and the Prepetition Third Lien Creditors (the "Third Priority 507(b) Claim"). The Second Priority 507(b) Claim shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the First Priority 507(b) Claim under this Interim Order, except that such Second Priority 507(b) Claim shall be junior and subordinate to the First Priority 507(b) Claim. The Third Priority 507(b) Claim shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the First Priority 507(b) Claim and the Second Priority 507(b) Claim under this Interim Order, except that such Third Priority 507(b) Claim shall be junior and subordinate to the First Priority 507(b) Claim and the Second Priority 507(b) Claim. Each of the First Priority 507(b) Claim, the Second Priority 507(b) Claim and the Third Priority 507(b) Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and the proceeds thereof (excluding Avoidance Actions, but including Avoidance Proceeds upon entry of the Final Order), subject to the relative priorities set forth above. Notwithstanding the foregoing, except to the extent

18

expressly set forth in this Interim Order, the Prepetition Second Lien Creditors and the Prepetition Third Lien Creditors shall not receive or retain any payments, property or other amounts on account of the Second Priority 507(b) Claim or Third Priority 507(b) Claim, respectively, until the Prepetition First Lien Obligations have been indefeasibly paid in full in cash in accordance with the priorities set forth herein, and the Prepetition Third Lien Creditors shall not receive or retain any payments, property or other amounts on account of the Third Priority 507(b) Claim until the Prepetition Second Lien Obligations have been indefeasibly paid in full in cash in accordance with the priorities set forth herein.

(c)     <u>Fees and Expenses</u>.  The Debtors shall pay, within ten (10) calendar days of delivery of an invoice (which shall include reasonable supporting detail, which may be redacted to protect privileged or confidential information), all reasonable and documented fees and expenses of:  (i) the First Lien Agent; (ii) Ducera Partners LLC, as financial advisor to certain Consenting Creditors; (iii) Paul, Weiss, Rifkind, Wharton & Garrison LLP ("<u>Paul, Weiss</u>") and Young Conaway Stargatt & Taylor, LLP, as counsel to the Ad Hoc Lender Committee; (iv) Shipman & Goodwin LLP ("<u>Shipman</u>"), as counsel to the First Lien Agent, and local counsel retained by the First Lien Agent; (v) Goodwin Procter LLP and Pepper Hamilton LLP, as counsel to SGF, Inc., in an aggregate amount, inclusive of all amounts payable pursuant to the Restructuring Support Agreement and Commitment Agreement, not to exceed $125,000; and (vi) any reasonably necessary specialist counsel to the Ad Hoc Lender Committee expressly approved in writing by the Debtors, which approval shall not be unreasonably withheld (collectively, the "<u>Prepetition Secured Party Professionals</u>").  Payment of all such fees and expenses shall not be subject to allowance by the Court and such professionals shall not be required to comply with the U.S. Trustee fee guidelines; <u>provided</u>, <u>however</u>, that any party

submitting fees and expenses pursuant to this Order shall promptly provide copies of its invoices to the U.S. Trustee and counsel to any Committee appointed in the Cases, and the Court shall have exclusive jurisdiction over any objections raised by the Committee or the U.S. Trustee to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within ten (10) calendar days after delivery of an invoice(s) therefor and shall be limited to the issue of the reasonableness of such fees and expenses.  In the event that within ten (10) calendar days from delivery of such invoices the U.S. Trustee or counsel to the Committee raises an objection to a particular invoice, and the parties are unable to resolve such objection, the Court shall hear and determine such dispute; <u>provided</u>, that payment of invoices shall not be delayed based on any such objections and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order of the Court.

(d)     <u>Adequate Protection Payments</u>.  The Debtors shall pay to the First Lien Agent, for the benefit of itself and the Prepetition First Lien Creditors, monthly adequate protection payments (the "<u>First Lien Adequate Protection Payments</u>"), in an amount resulting from applying a per annum rate equal to the non-default contract interest rate set forth in the First Lien Credit Agreement to the aggregate outstanding amount of Prepetition First Lien Obligations as of the Petition Date in respect of such relevant periods ending after the Petition Date; <u>provided</u>, <u>however</u>, that the First Lien Agent reserves the right to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for under the First Lien Credit Documents, and for the payment of any other amounts provided for in the First Lien Credit Documents.  The First Lien Adequate Protection Payments will be calculated on a monthly basis,

and be due and payable on the first business day of each month beginning in the first full month after entry of the Interim Order.

(e) Budget and Variance Reporting. Attached as **Exhibit A** hereto and incorporated herein by reference is a 13-week cash flow forecast (the "Budget"), including the anticipated uses of the Cash Collateral for such period. Every four (4) weeks following entry of the Interim Order, on the third business day of such week, the Debtors will provide the Prepetition Agents and counsel to the Consenting Creditors with an updated Budget for the subsequent 13-week period. The initial Budget and each subsequent Budget shall be in form and substance acceptable to the Required Consenting Creditors (as defined in the Restructuring Support Agreement) and each such subsequent Budget shall not be deemed to constitute the "Budget" for purposes of this Interim Order until such consent has been confirmed in writing by counsel to the Required Consenting Creditors. Pending approval by the Required Consenting Creditors, the prior approved Budget shall remain in full force and effect. On the third business day of each calendar week following entry of the Interim Order, the Debtors will also provide to the Prepetition Agents and counsel to the Consenting Creditors a Budget variance report/reconciliation (the "Budget Variance Report") setting forth in reasonable detail actual cash receipts and disbursements for the prior week, and all variances, on an individual line item basis and an aggregate basis, as compared to the previously delivered Budget on a cumulative weekly basis over a rolling four (4) week period, together with a statement certifying compliance with the Budget Covenants set forth below. The Budget Variance Report shall include an explanation, in reasonable detail, of any material variance. The Debtors shall ensure that at no time any of the following occur (together, the "Budget Covenants"): (i) a negative variance of 15% or more from the cash receipts set forth in the Budget (excluding the "Financing

21

draw/(repayments)" line item in the Budget), to be tested on a cumulative weekly basis over a rolling four (4) week period; (ii) a negative variance of 15% or more from the operating disbursements set forth in the Budget, to be tested on a cumulative weekly basis over a rolling four (4) week period; or (iii) any Debtor making any disbursement not contemplated by the Budget (after giving effect to the foregoing variances) without the prior written consent of the Required Consenting Creditors (in their sole discretion).

(f) <u>Access to Records</u>. Upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Prepetition Agents and the Consenting Creditors to have reasonable access to (i) inspect the Debtors' properties, and (ii) all information (including historical information and the Debtors' books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtors and other company advisors (during normal business hours), and the Prepetition Agents and the Consenting Creditors shall be provided with access to all information they shall reasonably request, excluding privileged items.

(g) <u>Right to Seek Additional Adequate Protection</u>. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition First Lien Creditors and, subject to the Intercreditor Agreements, the Prepetition Second Lien Creditors and Prepetition Third Lien Creditors, to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

5. <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant

DOCS_SF:94106.12 00251/001

the Adequate Protection Liens and the 507(b) Claims; (b) permit the Debtors to perform such acts as the Prepetition Agents or Prepetition Secured Creditors each may request in their reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition Agents and Prepetition Secured Creditors under this Interim Order; and (d) authorize the Debtors to pay, and the Prepetition Agents and Prepetition Secured Creditors to retain and apply, payments made in accordance with the terms of this Interim Order.

6.    <u>Grant and Perfection of Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the granting, attachment, validity, perfection, enforceability, and priority of the Adequate Protection Liens without the necessity of obtaining, filing, executing, or recording any financing statement, security agreement, vehicle lien application, patent filing, trademark filing, copyright filing, fixture filing, mortgage, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of possession of, or control over, assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement and any other action required to obtain "control" pursuant to section 9-104, 9-105, 9-106, and/or 9-107 of the Uniform Commercial Code) to grant, attach, validate or perfect (in accordance with applicable nonbankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Agents and Prepetition Secured Creditors to the priorities granted herein. Notwithstanding the foregoing, the First Lien Agent, the Second Lien Trustee and the Third Lien Trustee are each authorized, but not required, to file, as they in their sole discretion deem necessary or advisable, such financing statements, security agreements, vehicle lien applications, patent filings, trademark filings, copyright filings, fixture filing, mortgages, notices of liens, and

DOCS_SF:94106.12 00251/001

other instruments or similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens, and all such financing statements, security agreements, vehicle lien applications, patent filings, trademark filings, copyright filings, fixture filings, mortgages, notices of lien, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence, or perfect the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the First Lien Agent, the Second Lien Trustee and the Third Lien Trustee all such financing statements, security agreements, vehicle lien applications, mortgages, notices, instruments, and other documents as the First Lien Agent, the Second Lien Trustee or the Third Lien Trustee may reasonably request.  The First Lien Agent, the Second Lien Trustee or the Third Lien Trustee may file a copy of this Interim Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to, or in lieu of, such financing statements, mortgages, notices of lien, instrument, or similar document.  In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized to do and perform all acts to make, execute, and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Debtors' performance hereunder.

7.    Credit Bid.  Subject to entry of the Final Order, the First Lien Agent, for the benefit of the Prepetition First Lien Creditors, shall have the right (acting at the direction of the Requisite Lenders (as defined in the First Lien Credit Agreement, the "Requisite Lenders")) to credit bid under section 363(k) of the Bankruptcy Code all or any portion of their respective claims in connection with a sale of the Debtors' assets, without the need for further order of the Court, and whether the sale is effectuated under section 363 of the Bankruptcy Code, under a

chapter 11 plan of reorganization for any or all of the Debtors, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise. Subject to entry of the Final Order, the Second Lien Trustee, for the benefit of the Prepetition Second Lien Creditors, shall have the right to credit bid under section 363(k) of the Bankruptcy Code all or any portion of their respective claims in connection with a sale of the Debtors' assets, without the need for further order of the Court, and whether the sale is effectuated under section 363 of the Bankruptcy Code, under a chapter 11 plan of reorganization for any or all of the Debtors, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, provided that (a) the Second Lien Trustee obtains the prior written consent of the First Lien Agent (acting at the direction of the Requisite Lenders) for such credit bid, or (b) such credit bid provides for the payment in full and in cash of all Prepetition First Lien Obligations and any amounts due and owing to the Prepetition First Lien Creditors hereunder.

8.     Events of Default.   The occurrence and continuance of any of the following events, unless waived in writing by the First Lien Agent (acting at the direction of the Requisite Lenders) and the Required Consenting Creditors, shall constitute an event of default (collectively, the "Events of Default"):

(a)     the failure to obtain a Final Order in form and substance reasonably acceptable to the First Lien Agent (acting at the direction of the Requisite Lenders) and the Required Consenting Creditors within 45 days after the Petition Date;

(b)     the Debtors shall have filed a motion seeking to create any postpetition liens or security interests, other than those granted or permitted pursuant to this Interim Order or approved by the Required Consenting Creditors in writing;

DOCS_SF:94106.12 00251/001

(c)     the Debtors shall have filed a disclosure statement or chapter 11 plan that is not reasonably acceptable to the First Lien Agent (acting at the direction of the Requisite Lenders) and the Required Consenting Creditors;

(d)     the entry of a final order by the Court, other than this Interim Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, except as approved by the Required Consenting Creditors in writing;

(e)     the Court shall enter an order approving any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation of any Collateral;

(f)     the Debtors shall support, commence, or join as an adverse party in any suit or other proceeding against any of the Prepetition Agents or Prepetition Secured Creditors relating to the Prepetition Secured Obligations or Collateral, including any proceeding seeking to avoid or require repayment of any First Lien Adequate Protection Payments;

(g)     reversal, amendment, supplement, vacatur, or modification (without the express prior written consent of the First Lien Agent (acting at the direction of the Requisite Lenders) and the Required Consenting Creditors) of this Interim Order;

(h)     the entry of a final order by the Court avoiding or requiring repayment of any portion of the First Lien Adequate Protection Payments made by the Debtors hereunder;

(i)     dismissal of any of these Cases or conversion of any of these Cases to chapter 7 cases, or appointment of a trustee, receiver, interim receiver or manager, or

appointment of a responsible officer or examiner with enlarged powers in any of these Cases (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4));

(j)     the Debtors' exclusive right to file and solicit acceptances of a plan of reorganization is terminated or terminates;

(k)     termination of the Restructuring Support Agreement as to all parties thereto;

(l)     the failure to make First Lien Adequate Protection Payments or other material payments as set forth herein when due and such failure shall remain unremedied for more than five (5) business days after receipt by the Debtors of written notice thereof from the First Lien Agent (acting at the direction of the Requisite Lenders);

(m)     the failure by the Debtors to perform, in any respect, any of the terms, provisions, conditions, or obligations under this Interim Order, including a breach of the Budget Covenants set forth in Paragraph 4(e) hereof; and

(n)     the occurrence of an event of default under any DIP Financing (as defined below), unless timely waived by the DIP Agent and DIP Lenders (each as defined below), as applicable.

9.     Rights and Remedies Upon Event of Default.  Upon occurrence of an Event of Default and following the giving of five (5) business days' notice to the Debtors (the "Remedies Notice Period"), the First Lien Agent (acting at the direction of the Requisite Lenders) and the Prepetition First Lien Creditors may exercise the remedies available to them under this Interim Order and applicable non-bankruptcy law, including, but not limited to, revoking the Debtors' right to use Cash Collateral and collecting and applying any proceeds of the Collateral in accordance with the terms of this Interim Order and the Prepetition Secured Debt Documents.

During the Remedies Notice Period, the Debtors may request that this Court order the continued use of Cash Collateral. During the Remedies Notice Period, the Debtors may continue to use Cash Collateral in the ordinary course of business, consistent with past practices and the most recently delivered Budget, but may not enter into any transactions or arrangements (including, without limitation, the incurrence of indebtedness or liens, investments, restricted payments, asset sales, or transactions with non-Debtor affiliates) that are not in the ordinary course of business. Unless the Court orders otherwise during the Remedies Notice Period, at the end of the Remedies Notice Period, the Debtors shall automatically, without further notice or order of the Court, no longer have the right to use Cash Collateral, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the Remedies Notice Period, without further notice or order of the Court, and the First Lien Agent (acting at the direction of the Requisite Lenders) and the Prepetition First Lien Creditors shall be permitted to exercise all rights and remedies set forth in this Interim Order, the First Lien Credit Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated for the purposes of giving any notice contemplated hereunder. The delay or failure to exercise rights and remedies under this Interim Order or the First Lien Credit Documents shall not constitute a waiver of the First Lien Agent's or Prepetition First Lien Creditors' rights thereunder or otherwise.

10. <u>Carve Out</u>. As used in this Interim Order, the "<u>Carve-Out</u>" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory

28

rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 in the aggregate incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed by final order, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Committee appointed in the Cases pursuant to section 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the First Lien Agent (acting at the direction of the Requisite Lenders) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $250,000 incurred after delivery by the First Lien Agent (acting at the direction of the Requisite Lenders) of the Carve Out Trigger Notice, to the extent allowed by final order (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the First Lien Agent (acting at the direction of the Requisite Lenders) to counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Carve Out Trigger Notice Cap has been invoked. Notwithstanding anything to the contrary in this Interim Order, following the delivery of a Carve Out Trigger Notice, any of the statutory, Allowed Professional Fees or other fees covered by this Carve Out shall be paid (and shall be deemed to have been satisfied) first, from unencumbered cash that is not Cash Collateral (if any) and

second, if there is no remaining unencumbered cash that is not Cash Collateral, from Cash Collateral.

11.    <u>Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims</u>.  The stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon the Debtors, their affiliates, and any of their respective successors (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for a Debtor) in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.   The stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations, shall be binding upon all other parties in interest, including, without limitation, the Committee, if any, and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party in interest with proper standing granted by order of the Court (or other court of competent jurisdiction) has filed an adversary proceeding or contested matter (i) before the earlier of (a) the date on which this Court enters an order confirming the Debtors' chapter 11 plan of reorganization and (b) in the case of any such adversary proceeding or contested matter filed by a party-in-interest other than the Committee (if any), seventy-five (75) calendar days after entry of this Interim Order, and in the case of  any such adversary proceeding or contested matter filed by the Committee, if any, sixty (60) calendar days after the appointment of the Committee, subject to further extension by written agreement of the Debtors and the Required Consenting Creditors, each acting in their sole discretion (in each case, a "<u>Challenge Period</u>" and the date of expiration of each Challenge Period being a "<u>Challenge Period Termination Date</u>"), (ii) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding:  (a) the validity, enforceability, extent, priority, or

perfection of the mortgages, security interests, and liens of any Prepetition Agent or Prepetition Secured Creditor; or (b) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Secured Obligations (any such claim, a "Challenge"), and (iii) there is a final order entered in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.  Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is filed and overruled):  (a) any and all such Challenges by any party (including, without limitation, the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released, and barred; (b) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtors' Cases and any Successor Cases; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' stipulations and admissions contained in this Interim Order, including, without limitation, the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Agents' and Prepetition Secured Creditors' claims, liens, and interests contained in this Interim Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates, and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases.  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in this Interim Order, including the Debtors' Stipulations, shall nonetheless remain

binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee appointed in these Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Secured Debt or the Prepetition Secured Obligations, and an order of the Court conferring such standing on a Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by the Committee or such other party-in-interest.

12.    <u>Limitations on the Use of Cash Collateral</u>.  Notwithstanding anything herein to the contrary, the Debtors shall not assert or prosecute, and no portion of the proceeds of the Collateral, including any Cash Collateral or the Carve Out, and no disbursements set forth in the Budget, shall be used in connection with (a) preventing, hindering, or delaying any of the Prepetition Agents' or the Prepetition Secured Creditors' enforcement or realization upon any of the Collateral once an Event of Default has occurred and after the Remedies Notice Period, (b) objecting or challenging or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Secured Obligations or Collateral, or any other rights or interest of any of the Prepetition Agents, (c) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Agents or any Prepetition Secured Creditor or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or (d) paying any amount on account of any claims arising prior to the Petition Date or any non-ordinary course administrative claim unless

such payments are (i) approved by an order of this Court and (ii) in accordance with the Budget Covenants; provided, however, that up to $10,000 of Cash Collateral may be used to pay the allowed fees and expenses incurred solely by the Committee in investigating (but not commencing or prosecuting), the validity, enforceability, perfection, priority, or extent of the liens under the Prepetition Secured Debt (the "Committee Investigation Budget"); provided further, however, that, subject to entry of the Final Order, any fees and expenses incurred by the Committee or any of its legal or financial advisors in connection with any such investigation in excess of the Committee Investigation Budget, and any fees or expenses incurred by the Committee or its legal or financial advisors in connection with commencing or prosecuting any Challenge, shall not constitute allowed administrative expense claims for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

13.    Letters of Credit.  For the avoidance of doubt, other than as provided in this paragraph 13, Cash Collateral, as used in this Order, shall exclude any cash or cash equivalents in the amount of $2,552,276.14, as of May 31, 2017, currently held by Bank of America, N.A. ("B of A") as security supporting those certain letters of credit (collectively, the "B of A L/Cs," and such cash collateral, the "B of A L/C Cash Collateral", and the segregated account in which such B of A L/C Cash Collateral is held, the "B of A L/C Cash Collateral Account"), issued by B of A for the benefit of one or more of the Debtors, and the fees, costs and expenses and other amounts related to such letters of credit (together with the B of A L/Cs, the "B of A L/C Obligations"), pursuant to that certain Loan and Security Agreement dated as of December 15, 2011, among the Debtors and certain non-debtor affiliates, the lenders parties thereto from time to time, B of A and Wells Fargo Bank, National Association ("Wells Fargo"), as lender and administrative agent.   B of A has continued to hold the B of A L/C Cash Collateral in

connection with the continued provision and maintenance of the B of A L/Cs pursuant to (i) that certain Termination Agreement, dated December 7, 2016, between certain of the Debtors, B of A and Wells Fargo (the "Termination Agreement") and (ii) that certain letter, dated April 25, 2017 (the "B of A Cash Collateral Letter"), between B of A and A.M. Castle.  Notwithstanding anything to the contrary in the Prepetition Secured Debt Documents, the Intercreditor Agreements or herein, the Debtors stipulate and agree that (i) B of A holds a valid, binding, enforceable, perfected, non-avoidable first-priority security interest in and lien on the B of A L/C Cash Collateral that is held in the B of A L/C Cash Collateral Account; (ii) B of A is entitled to continue to hold the B of A L/C Cash Collateral to support the B of A L/C Obligations consistent with the Termination Agreement, the B of A Cash Collateral Letter and any related documentation; and (iii) solely for purposes of a Challenge as described in paragraph 11 hereof (and not, for the avoidance of doubt, for any other purpose under this Interim Order), the stipulations set forth in this paragraph 13 shall be considered Debtors' Stipulations, B of A shall be treated as if it was a Prepetition Secured Creditor with respect to the stipulations in this paragraph 13, and the B of A L/C Obligations shall be treated as if they were Prepetition Secured Obligations with respect to the stipulations in this paragraph 13 (with any extension of the Challenge Period with respect to a Challenge with respect to such B of A L/C Obligations subject to the consent of B of A in addition to the parties set forth in paragraph 11).  The B of A L/C Obligations include reasonable fees and expenses incurred by Bank of America in connection with preservation and maintenance of the B of A L/Cs (including the B of A L/C Cash Collateral) and these chapter 11 cases, including without limitation reasonable fees and expenses of counsel, and Bank of America shall be entitled and authorized to deduct such amounts from the B of A L/C Cash Collateral, provided, that Bank of America shall, prior to

deducting such amounts, provide copies of the invoices evidencing such fees and expenses to the Debtors and other parties contemplated in paragraph 4(c) of this Order on 10 days' notice. Consistent with paragraph 4(c), the Court shall have exclusive jurisdiction over any objections raised by the Committee (if any), Ad Hoc Lender Committee or the U.S. Trustee to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within ten (10) calendar days after delivery of an invoice(s) therefor and shall be limited to the issue of the reasonableness of such fees and expenses.  In the event that within ten (10) calendar days from delivery of such invoices the U.S. Trustee, counsel to the Ad Hoc Lender Committee or counsel to the Committee raises an objection to a particular invoice, and the parties are unable to resolve such objection, the Court shall hear and determine such dispute; provided, that Bank of America shall be entitled to deduct all such fees and expenses notwithstanding any such objections, and shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order of the Court.  Notwithstanding anything herein to the contrary, (i) upon the indefeasible payment in full, in cash, of all B of A L/C Obligations, any remaining B of A L/C Cash Collateral (including any remaining cash or cash equivalents in the B of A L/C Cash Collateral Account) shall be deemed to constitute Cash Collateral for purposes of this Order and (ii) the Debtors shall not transfer any cash or cash equivalents to the B of A L/C Cash Collateral Account on or after the Petition Date without the prior written consent of the Postpetition Agent and the Required Consenting Creditors.

14.    No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

15.    Section 506(c) Claims.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these Cases at any time, or any future proceeding that may result therefrom, including any Successor Cases, shall be charged against or recovered from the Prepetition Agents or any Prepetition Secured Creditor or any of their respective claims or the Collateral (including the Prepetition Collateral) pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior express written consent of the Prepetition Agents or the Required Consenting Creditors, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such representatives, agents, or lenders.  Upon entry of the Final Order, the Debtors and their estates shall be deemed to have irrevocably waived, and shall be prohibited from asserting, any surcharge claim, under section 506(c) or otherwise, for any costs incurred, including those in connection with the preservation, protection, or enhancement of, or realization by the Prepetition Secured Creditors upon, the Collateral.

16.    No Waiver of Prepetition Secured Creditors' Rights; Reservation of Rights. Notwithstanding any provision in this Interim Order to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any Prepetition Secured Creditor's rights with respect to any person or entity or with respect to any other collateral owned or held by any person or entity.  The rights of the Prepetition Secured Creditors are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of:  (a) the Prepetition Secured Creditors' rights under any of the Prepetition Secured Debt Documents; (b) the Prepetition Secured Creditors' rights to seek any other or supplemental relief in respect of the Debtors; (c) the Prepetition Secured Creditors' rights to seek modification of the grant of adequate protection provided under

this Interim Order so as to provide different or additional adequate protection at any time; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Creditors.

17.    No Liability to Third Parties.  In permitting the Debtors to use of Cash Collateral under the terms set forth herein or in taking any other actions related to this Interim Order, the Prepetition Agents and Prepetition Secured Creditors (a) shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (b) shall not owe any fiduciary duty to any of the Debtors, their creditors, or their estates, and shall not be party to or be deemed to be party to a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Agents or the Prepetition Secured Creditors of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

18.    No Marshaling/Applications of Proceeds.  Upon entry of the Final Order, the Prepetition Agents and Prepetition Secured Creditors shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral (including the Prepetition Collateral), as the case may be, and proceeds or payments shall be received and applied in accordance with the Prepetition Secured Debt Documents, including,

DOCS_SF:94106.12 00251/001

without limitation, the Intercreditor Agreements, notwithstanding any other agreement or provision to the contrary.

19.    Section 552(b).    Upon entry of the Final Order, the Prepetition Agents and Prepetition Secured Creditors shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Agents or Prepetition Secured Creditors with respect to proceeds, product, offspring, or profits of any of the Collateral (including the Prepetition Collateral).

20.    Proofs of Claim.    Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Cases or Successor Cases to the contrary, the Prepetition Agents and Prepetition Secured Creditors will not be required to file proofs of claim in any of these Cases or Successor Cases for any claim described herein, and the Debtors' Stipulations in Paragraph E herein shall be deemed to constitute a timely filed proof of claim for the Prepetition Agents and Prepetition Secured Creditors.

21.    Binding Effect of Interim Order.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Agents, the Prepetition Secured Creditors, all other creditors of any of the Debtors, any Committee or any other Court-appointed committee appointed in any Cases, and all other parties in interest and the respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estates of the Debtors or with respect to the property of the estate of any Debtors in any of these Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.  In the event of

any inconsistency between the provisions of this Interim Order and the Prepetition Secured Debt Documents or any other order (including any "First Day" order, other than the DIP Order), the provisions of this Interim Order shall govern and control. Any payments to be made by any of the Debtors under any order (including any "First Day" order) shall be made in accordance with this Interim Order.

22.    Survival.

(a)    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of these Cases; (b) converting any of these Cases to a case under chapter 7 of the Bankruptcy Code; or (c) dismissing any of these Cases or any Successor Cases.  The terms and provisions of this Interim Order, including, without limitation, the granting of the Adequate Protection Liens and 507(b) Claims, and the other protections granted to the Prepetition Agents and Prepetition Secured Creditors pursuant to this Interim Order, shall continue in full force and effect notwithstanding entry of any such order.

(b)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the validity and enforceability of the Adequate Protection Obligations granted in connection therewith, to the extent consistent with section 364(e) of the Bankruptcy Code.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or Adequate Protection Obligations incurred by the Debtors to the applicable Prepetition Secured Creditors prior to the actual receipt of written notice by the Consenting Creditors of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original

DOCS_SF:94106.12 00251/001

provisions of this Interim Order, to the extent consistent with section 364(e) of the Bankruptcy Code.

(c)     Except as expressly provided in this Interim Order, the Adequate Protection Obligations and all other rights and remedies of the Prepetition Agents and the Prepetition Secured Creditors granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by the entry of an order converting any of these Cases to a case under chapter 7, dismissing these Cases, approving the sale of any Collateral (including any Prepetition Collateral) pursuant to section 363(b) of the Bankruptcy Code or the entry of an order confirming a plan of reorganization in these Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.  The terms and provisions of this Interim Order shall continue in these Cases, in any Successor Cases, or in any superseding chapter 7 case under the Bankruptcy Code, and the Adequate Protection Obligations and all other rights and remedies of the Prepetition Agents and the Prepetition Secured Creditors granted by the provisions of this Interim Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash.

(d)     Without prejudice to the rights of parties in interest as described in Paragraph 11 herein, the Prepetition Secured Creditors had, and shall be deemed to have had, perfected and enforceable security interests in all of the Debtors' Cash Collateral as of the Petition Date.  If, in connection with any postpetition financing the Debtors may incur that is approved by the Court ("DIP Financing"), any Cash Collateral is thereafter held in one or more accounts that are in the possession or control of the agent (the "DIP Agent") or lenders (the "DIP Lenders") for such DIP Financing, then notwithstanding such transfer, the Prepetition Secured

40

Creditors shall continue to have a perfected security interest in such accounts and such Cash Collateral to the same extent that they had such security interest as of the Petition Date (which security interests shall have the priority set forth in this Order and any order of the Court approving such DIP Financing).

23.     <u>Final Hearing</u>.  The Final Hearing shall be July 7, 2017, at 10:00 a.m., prevailing Eastern Time.   The Debtors shall provide notice of the Final Hearing in accordance with applicable rules.  Any objections or responses to the Motion must be filed on or before June 30, 2017, at 4:00 p.m., prevailing Eastern Time.  If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

24.     <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

25.     <u>Retention of Jurisdiction</u>.  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

Wilmington, Delaware
Dated: June 21 , 2017

_____
HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

41