**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **IN RE:** | ) | **Chapter 11** |
| | ) | |
| **KEYSTONE TUBE COMPANY, LLC,**[1] ***et al.*,** | ) | **Case No. 17-11330 (LSS)** |
| | ) | |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | **Re: Docket No. 21** |

**ORDER (I) AUTHORIZING DEBTORS TO: (A) OBTAIN POSTPETITION REVOLVING LOAN FINANCING AND (B) USE CASH COLLATERAL; AND (II) GRANTING RELATED RELIEF**

This matter came before this Court on the motion (the "Motion") of Keystone Tube Company, LLC, *et al.* (the "Debtors") requesting that this Court enter an order (i) authorizing Debtors to: (a) incur Postpetition Debt and (b) use certain Cash Collateral; and (ii) granting related relief. Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved or overruled by the Court, and good and sufficient cause appearing therefor:

**THE MOTION IS GRANTED, AND THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]:**

A. On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code. Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B. The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Determination of the Motion

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Keystone Tube Company, LLC (8746); A.M. Castle & Co. (9160); HY-Alloy Steels Company (9160); Keystone Service, Inc. (9160); and Total Plastics, Inc. (3149). The location of the Debtors' headquarters and service address is 1420 Kensington Road, Suite 220, Oak Brook, IL 60523.

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052.

constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2), and the Debtors hereby confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection with the Motion consistent with Article III of the United States Constitution. Venue over this Motion is proper under 28 U.S.C. §§ 1408 and 1409(a).

C. No Committee has been appointed in these Cases.

D. The Prepetition Secured Parties have consented to the terms of this Order and are entitled to the adequate protection as set forth in the Final Cash Collateral Order.

E. In addition to the relief granted by the Final Cash Collateral Order, the Debtors need to use Cash Collateral and incur Postpetition Debt as provided herein in order to continue operating in the ordinary course of business, and the entry of this Order will enhance the possibility of a successful reorganization, as a result of the reduction in financing costs (as compared to existing debt to be repaid as provided herein) and access to sufficient working capital and liquidity.

F. The Debtors reasonably believe and represent that the Budget contains all expenses that are reasonable and necessary for the preservation of the DIP Collateral for the period set forth in the Budget and, therefore, includes all amounts potentially chargeable to the Postpetition Agent and the Postpetition Lenders under Code § 506(c).

G. The Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operations of their businesses. Except as provided below, the Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Postpetition Lenders.

H. The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e). Accordingly, the Postpetition Agent, the Postpetition Lenders and the DIP Obligations shall be entitled to the full protection of Code § 364(e).

I. The terms and conditions of the Postpetition Documents are fair and reasonable, the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

J. Solely by reason of extending the Postpetition Debt, the Postpetition Agent, and the Postpetition Lenders shall not be deemed in control of the operations, management or liquidation of any of the Debtors or their assets.

K. Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for the Postpetition Lenders' provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

L. The notice provided by the Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 363, 364(c) and (d) and the local rules of this District, and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1. Authorization to Use Cash Collateral; Prohibition Against Use of Cash Collateral. The Prepetition Secured Parties have consented to, and the Debtors are authorized to use, the Prepetition Secured Parties' cash collateral solely in accordance with the terms and provisions of the Final Cash Collateral Order. The Postpetition Secured Parties have consented to, and the Debtors are hereby authorized to use, the Postpetition Secured Parties' Cash Collateral solely in accordance with the terms and provisions of this Order, to the extent required to pay when due those expenses enumerated in the Budget (including, without limitation, the Carve-Out) and to pay the Permitted Adequate Protection Payments and the Postpetition Charges. The Debtors shall deposit all Cash Collateral now or hereafter in their possession or control into deposit accounts subject to deposit account control agreements in favor of Postpetition Agent other than Cash Collateral remitted to disbursement accounts as and when necessary to pay the items set forth in the Budget, and other than Cash Collateral pledged in support of credit card, insurance, and letter of credit obligations as identified in the Postpetition Credit Agreement. Except as expressly provided for in this Order, Debtors will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363: (1) Postpetition Agent has consented to such order; (2) at the time such an order is entered, there is no Postpetition Debt outstanding and no obligation of any Postpetition Lender to extend Postpetition Debt; or (3) such Cash Collateral is used for the Payment in Full of the Postpetition Debt in accordance with the Postpetition Credit Agreement.

2. Authorization To Incur Postpetition Debt.

(a) Authorization to Enter Into Postpetition Documents. The Debtors are hereby authorized and have agreed to: (1) execute the Postpetition Documents and such related documents that the Postpetition Agent reasonably requests to implement the transactions contemplated by the Postpetition Documents; and (2) perform their obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order, including, without limitation, the payment of all fees in connection therewith and set forth in a separate letter agreement between the DIP Borrowers and Postpetition Agent (copies of which have been shared in advance with the Committee, the Office of the United States Trustee and counsel to the Ad Hoc Lender Committee on a confidential "professional eyes only" basis). Upon execution and delivery of the Postpetition Documents, the Postpetition Documents shall constitute valid and binding obligations of Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order shall govern and control. No obligation, payment, transfer or grant of security under the Postpetition Documents shall be stayed, restrained, voidable or recoverable under the Code or under any applicable law, or subject to any defense, reduction, recoupment, setoff or counterclaim.

(b) Permitted Uses of Postpetition Debt. Debtors are authorized and have agreed to incur Postpetition Debt solely: (1) in accordance with the terms and provisions of this Order and the Postpetition Documents, (2) to repay up to $75,000,000 of the Prepetition First Lien Obligations (as defined in the Final Cash Collateral Order), subject to the rights of parties in interest set forth in Paragraph 11 of the Final Cash Collateral Order, (3) to the extent required to pay those expenses enumerated in the Budget (including, without limitation, the Carve-Out), as and when such expenses become due and payable, (4) to provide for adequate protection in favor of the Prepetition First Lien Secured Parties in the form of the Permitted Adequate Protection Payments, and (5) to pay the Postpetition Charges. No proceeds of Postpetition Debt or DIP Collateral (including, without limitation, Cash Collateral) may be used to provide any payments in favor of the Prepetition Secured Parties on account of adequate protection or for application to any Prepetition Debt, in each case, including any interest, fees, charges or expenses arising on account thereof, so long as the Postpetition Debt remains outstanding other than (i) on the Closing Date (as defined in the Postpetition Credit Agreement), as expressly set forth in clause

(2) above, and (ii) on account of Permitted Adequate Protection Payments. In the event that, prior to the Payment in Full of the Postpetition Debt, any Prepetition Secured Party receives proceeds of Postpetition Debt or any DIP Collateral other than as expressly permitted by this Order, or the Debtors or Trustee recover any such amounts, such Prepetition Secured Party, Debtor or Trustee, as applicable, shall promptly remit such amounts to Postpetition Agent for application to the Postpetition Debt in accordance with the Postpetition Documents.

(c) Additional Terms of Postpetition Debt.

> (i) Maximum Amount. The maximum principal amount of Postpetition Debt outstanding shall not at any time exceed Eighty-Five Million Dollars ($85,000,000).
>
> (ii) Interest. The Postpetition Debt shall bear interest at (1) a per annum rate equal to the "Alternate Base Rate" plus the "Applicable Margin", as each term is defined in the Postpetition Credit Agreement, with such margin based on a pricing grid set forth in the Postpetition Credit Agreement, with respect to Domestic Rate Loans, and (2) a per annum rate equal to the "Eurodollar Rate" plus the "Applicable Margin", as each term is defined in the Postpetition Credit Agreement, with such margin based on a pricing grid set forth in the Postpetition Credit Agreement, with respect to LIBOR Rate Loans.
>
> (iii) Maturity. The Postpetition Debt shall mature and be due and payable in full by Debtors on the Termination Date.
>
> (iv) Joint and Several Liability of Debtors. The obligations of each Debtor under this Order and the Postpetition Documents shall be joint and several.

(d) Superpriority Administrative Expense Status. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code (the "Superpriority Claim"), including, without limitation, any "First Priority 507(b) Claim", "Second Priority 507(b) Claim" and "Third Priority 507(b) Claim" (as each term is defined in the Final Cash Collateral Order), subject only to the Carve-Out. The Superpriority Claim shall be payable from and have recourse to all DIP Collateral and all proceeds thereof, subject only to the payment of the Carve-Out to the extent specifically provided for herein. Subject only to the Carve-Out, the Superpriority Claim shall not be made

subject to or *pari passu* with any other costs or expenses of administration of the Cases or any successor Cases. Further, the Postpetition Debt is entitled to the protections of Code §364(e).

(e) Postpetition Liens. Postpetition Agent (for the benefit of the Postpetition Lenders) is hereby granted the Postpetition Liens to secure the Postpetition Debt. The Postpetition Liens: (1) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d), are Priority Liens (subject only to the Carve-Out and Permitted Priority Liens) and shall be deemed to be effective and perfected automatically as of the Filing Date without any further action by Debtors or Postpetition Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office) or other documents or instruments, and without the necessity of taking possession or control of any DIP Collateral (including by entering into any deposit account control agreement and any other action required to obtain "control" pursuant to section 9-104, 9-105, 9-106, and/or 9-107 of the Uniform Commercial Code) or otherwise perfecting in accordance with applicable nonbankruptcy law; (2) shall not be subject to or subordinate to any security interest or lien which is avoided and preserved under Code § 551; (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases; (4) shall not be subject to Code § 510(c); and (5) shall not be subject to any landlord's lien, bailee's rights, right of distraint or levy, security interest or other interest that any landlord, bailee, warehousemen or landlord's mortgagee may have in the DIP Collateral located on such leased premises. Notwithstanding the foregoing, Debtors are hereby authorized to do and perform all acts and shall execute and deliver to Postpetition Agent such financing statements, mortgages, instruments and other documents as Postpetition Agent may request from time to time in connection with the creation and perfection of the Postpetition Liens granted by the Debtors, and any such documents filed by Postpetition Agent shall be deemed filed as of the Filing Date; provided, that should Postpetition Agent's or any Postpetition Lender's internal regulatory or compliance requirements require the completion of flood due diligence and/or obtaining evidence of applicable flood insurance with respect to any real property or leasehold interest, then until the completion of such flood due diligence, no mortgages shall be required to be filed with respect to any real property or leasehold interest. Further, a certified copy of this Order may, in the discretion of Postpetition Agent, be filed with or recorded in filing or recording offices in addition to, or in lieu of, such financing statements, mortgages, notices of

lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(f) Prohibition Against Additional Debt. Debtors will not incur or seek to incur debt (including, without limitation, from any of the Prepetition Secured Parties) secured by a lien which is equal to or superior to the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1) that is equal to or superior to the Superpriority Claim, unless, in addition to the satisfaction of all requirements of Code § 364: (1) Postpetition Agent has consented to such order; (2) the incurrence of such debt is permitted pursuant to the terms of the Postpetition Credit Agreement; (3) at the time such an order is entered, there is no Postpetition Debt outstanding, and no obligation of Postpetition Lenders to extend Postpetition Debt; or (4) such credit or debt (or the proceeds thereof ) is used to cause the Payment in Full of the Postpetition Debt in accordance with the Postpetition Credit Agreement.

3. Adequate Protection of Interests of Prepetition Secured Parties in the Prepetition Collateral. Prepetition Secured Parties have consented to the terms of this Order and are entitled to adequate protection as set forth in the Final Cash Collateral Order; provided that the Prepetition Secured Parties shall not be entitled to any payment on account of such adequate protection with proceeds of the Postpetition Debt or the DIP Collateral (including, without limitation, the Cash Collateral) other than the Permitted Adequate Protection Payments. The Adequate Protection Liens granted to the Prepetition Secured Parties pursuant to Paragraph 4(a) of the Final Cash Collateral Order shall be subject to and subordinate to the Postpetition Liens as set forth in this Order, and the Adequate Protection Superpriority Claims granted to the Prepetition Secured Parties pursuant to Paragraph 4(b) of the Final Cash Collateral Order shall be subject to and subordinate to the DIP Obligations and the Superpriority Claims, as set forth in this Order.

4. Certain Postpetition Priorities and Other Matters.

(a) The Prepetition Secured Parties shall not (and hereby waive any right to) at any time or under any circumstances, object to, challenge or contest, or directly or indirectly, join in, support or otherwise participate in any contest, challenge or objection by any other person, the legality, validity, extent, perfection, priority, enforceability or amount of, or raise any claim or defense alleging the avoidability or voidablity of any DIP Obligations or any

Postpetition Lien in the DIP Collateral; and the Postpetition Secured Parties shall not (and hereby waive any right to) at any time or under any circumstances, object to, challenge or contest, or directly or indirectly, join in, support or otherwise participate in any contest, challenge or objection by any other person, the legality, validity, extent, perfection, priority, enforceability or amount of, or raise any claim or defense alleging the avoidability or voidablity of any Prepetition Debt or any Lien of the Prepetition Secured Parties in the Prepetition Collateral.

(b) Until the Payment in Full of the Postpetition Debt, no Prepetition Secured Party shall exercise any enforcement rights or remedies against the DIP Collateral, and the Prepetition Secured Parties acknowledge and agree that the Postpetition Secured Parties shall have the exclusive right following the Remedies Notice Period (as defined below) to take action or otherwise exercise any rights or remedies, at their election, with respect to the DIP Collateral in accordance with this Order and the Postpetition Documents; provided, however, that the Prepetition Secured Parties may (1) withdraw their consent to the use of Cash Collateral subject to the terms and conditions of the Final Cash Collateral Order, (2) exercise the purchase right set forth in Section 16.18 of the Postpetition Credit Agreement, (3) provide or support any other party in providing replacement DIP financing that would result in the Payment in Full of the Postpetition Debt, (4) take any Permitted Junior Lien Action, and (5) exercise their rights and remedies with respect to their interest in the Prepetition Collateral at any time on or after ninety (90) days after the Termination Date if the Postpetition Secured Parties are not then diligently pursuing, in good faith, the exercise of remedies with respect to all or a material portion of the DIP Collateral (which exercise shall be deemed to include efforts in connection with any potential sale, transfer or other disposition of any DIP Collateral by the Debtors). In connection with the foregoing, if the Postpetition Secured Parties seek to exercise remedies in accordance with this Order and the Postpetition Documents after the Remedies Notice Period, (a) no Prepetition Secured Party may contest, protest or object to any such action, proceeding or other exercise of remedies with respect to the DIP Collateral by the Postpetition Secured Parties, (b) no Prepetition Secured Party may take any action that hinders, delays or otherwise interferes with any such action by the Postpetition Secured Parties, and (c) the Prepetition Secured Parties agree that in connection with the exercise of any such rights or remedies by the Postpetition Secured Parties that results in the sale, transfer or other disposition of any DIP Collateral (including any consent by the Postpetition Secured Parties to a sale, transfer or other disposition of any DIP

Collateral by the Debtors), if the Postpetition Agent agrees to release its Lien on the DIP Collateral so disposed of, the Prepetition Secured Parties' Lien therein shall be deemed released automatically and without any further action required, so long as the Liens of the Prepetition Secured Parties attach to the proceeds thereof; provided that, for the avoidance of doubt the Prepetition Secured Parties shall not be prohibited from taking any of the actions set forth in clauses (1) through (5) above.

(c) Notwithstanding anything herein or in the Postpetition Documents to the contrary, without the prior written consent of the First Lien Agent (as defined in the Final Cash Collateral Order), acting at the direction of the Requisite Lenders (as defined in the Final Cash Collateral Order), no Postpetition Document shall be amended, modified, supplemented or waived in a manner that would (a) increase the "Applicable Margin" (as defined in the Postpetition Credit Agreement) or any other similar form of interest rate under any Postpetition Document in a manner that would result in the total yield on the Postpetition Debt increasing by more than 2.00 percentage points per annum above the total yield on the Postpetition Debt as of the date hereof (excluding increases resulting from increases to the underlying reference rate, the application of any pricing grid or the accrual of interest at the default rate, in each case solely to the extent set forth in the Postpetition Credit Agreement as of the date hereof); (b) increase the outstanding principal amount of the loans under the Postpetition Documents to an amount that would exceed $85,000,000, or (c) change any covenants or events of default under any Postpetition Document to restrict any Debtor from making payments on account of the Permitted Adequate Protection Payments that would otherwise be permitted under the Postpetition Credit Agreement as in effect on the date hereof.

5. Termination Date; Rights and Remedies.

(a) Effect of Termination Date. Unless extended upon the written agreement of Postpetition Agent, upon the Termination Date and following the giving of five business days' notice (the "Termination Date Notice", and such period the "Remedies Notice Period") to the Debtors, counsel to the Ad Hoc Lender Committee, counsel to the Committee and the U.S. Trustee, without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral and incur Postpetition Debt hereunder will automatically terminate; provided that, for the avoidance of doubt the Postpetition Lenders shall have no obligation to advance any

Postpetition Debt during such Remedies Notice Period; and (2) at Postpetition Agent's election: (i) the Postpetition Debt shall be immediately due and payable, (ii) the Debtors shall be prohibited from using Cash Collateral for any purpose other than application to the Carve-Out and the Postpetition Debt in accordance with this Order and the Postpetition Documents, and (iii) Postpetition Agent shall be entitled to setoff any cash in the Postpetition Agent's possession or control and apply such cash, subject to the Carve-Out, to the Postpetition Debt in accordance with the Postpetition Documents. During the Remedies Notice Period, the Debtors may seek (and the Prepetition Secured Parities may join or otherwise support the Debtors in seeking) an order of this Court determining that an Event of Default alleged to have given rise to the Termination Date did not occur; provided, however, that during such five (5) business day period, Postpetition Lenders shall have no obligation to advance Postpetition Debt to the Debtors.

(b) Rights and Remedies. Upon the conclusion of the Remedies Notice Period, at Postpetition Agent's election without further order of the Court: (1) the Postpetition Agent and Postpetition Lenders shall have automatic and immediate relief from the automatic stay with respect to the DIP Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to them under the Postpetition Documents and applicable nonbankruptcy law; and (2) the Debtors shall surrender the DIP Collateral and otherwise reasonably cooperate with the Postpetition Agent and Postpetition Lenders in the exercise of their rights and remedies under the Postpetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the DIP Collateral upon the request and subject to terms and conditions acceptable to the Postpetition Agent; provided, however, that notwithstanding the foregoing, in the event that one or more Prepetition First Lien Creditors delivers to Agent, during the Remedies Notice Period, an irrevocable Purchase Notice (as defined in the Postpetition Credit Agreement) to purchase all of the DIP Obligations pursuant to the terms and conditions set forth in Section 16.18 of the Postpetition Credit Agreement, the Postpetition Secured Parties agree that, absent exigent circumstances, they shall not affirmatively exercise any rights or remedies against the DIP Collateral if such purchase is consummated within seven business days of receipt of the Purchase Notice and otherwise in accordance with Section 16.18 of the Postpetition Credit Agreement (as in effect as of the date hereof); provided

further, that for the avoidance of doubt, during such period, (1) the Postpetition Secured Parties shall have no obligation to extend Postpetition Debt to the Debtors or consent to the use of Cash Collateral and (2) any collateral review, examination, appraisal or other evaluation of the DIP Collateral by the Postpetition Secured Parties shall not constitute an exercise of remedies. Notwithstanding anything herein or in the Postpetition Documents to the contrary, (i) the Prepetition First Lien Creditors are express third party beneficiaries of Section 16.18 of the Postpetition Credit Agreement and shall be entitled to enforce such provision as if they were parties thereto in accordance with its terms, and Prepetition Agent shall be entitled to enforce such provision against the Prepetition First Lien Creditors as if they were parties thereto in accordance with its terms, and (ii) no amendment, modification, waiver or supplement to Section 16.18 of the Postpetition Credit agreement (as in effect as of the date hereof), or any defined term used therein or any exhibit or other section cross-referenced therein, shall be effective without the prior written consent of the Prepetition First Lien Creditors.

(c) Access to Collateral. Notwithstanding anything to the contrary herein, following the conclusion of the Remedies Notice Period and upon written notice to the landlord of any of Debtors' leased premises that an Event of Default has occurred and is continuing, Postpetition Agent may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the DIP Collateral located thereon and shall be entitled to the Debtors' rights and privileges under such lease(s) without interference from such landlord; provided that, to the extent not otherwise paid by the Debtors, Postpetition Agent shall pay to such landlord (on the Debtors' behalf) non-default basic rent first accruing after the above referenced written notice and during the period of occupancy by Postpetition Agent, calculated on a per diem basis.

6. Carve-Out.

(a) Carve-Out Terms. As used in this Order, the "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below) through the Termination Date; (ii) all reasonable fees and expenses up to $25,000 in the aggregate incurred by a trustee under section 726(b) of the Code (without regard to the notice set forth in (iii) below) up to the

Termination Date; (iii) to the extent allowed by final order, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Code (the "Debtor Professionals") and any Committee appointed in the Cases pursuant to section 1103 of the Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the Postpetition Agent of a "Carve Out Trigger Notice" (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after delivery by the Postpetition Agent of the Carve Out Trigger Notice, to the extent allowed by final order (the "Post-Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Postpetition Agent to counsel to the Debtors, the U.S. Trustee, counsel to the Committee and counsel to the Ad Hoc Lender Committee, which notice may be delivered following the occurrence of an Event of Default, stating that the Post-Trigger Notice Cap has been invoked. Notwithstanding anything to the contrary herein, following the delivery of a Carve Out Trigger Notice, the Debtors shall be permitted to pay, in their discretion, any of the statutory, Allowed Professional Fees or other fees covered by this Carve-Out first from any prepetition retainer or cash that is not Cash Collateral (if any) and thereafter from any available Cash Collateral. A reserve shall be established under the Postpetition Credit Agreement in an amount determined on a monthly basis for accrued and unpaid amounts contemplated by the Budget for Professional Persons, and the fees set forth in clauses (i) and (ii) above; provided that such reserves shall be released as and when needed to provide payment with respect to such amounts reserved for, in accordance with the Budget. Except as set forth in the preceding sentence, Postpetition Agent and Postpetition Lenders shall have no obligation to fund any fees or expenses of Professional Persons accrued on, prior to, or after the Termination Date.

(b) Carve-Out Usage. No portion of the Carve-Out and no Postpetition Debt or DIP Collateral (including, without limitation, Cash Collateral) may be used to pay any fees or expenses incurred by any entity, including the Debtors, any Committee or any Professional Persons, in connection with claims or causes of action adverse to the interests of the Postpetition Agent and the Postpetition Lenders, including their interest in the DIP Collateral, including, without limitation, (1) preventing, hindering or delaying Postpetition Lenders'

enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any DIP Collateral without Postpetition Agent's consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Postpetition Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Postpetition Agent and Postpetition Lenders, or in asserting any claims or causes of action, against Postpetition Agent or Postpetition Lenders; provided, that the Carve-Out may be used to pay fees and expenses incurred by the Professional Persons in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Postpetition Agent.

7. No Surcharge. Effective upon the entry of this Order, the Debtors (or any Trustee) agree that there shall be no surcharge of the DIP Collateral for any purpose, unless agreed to in writing by the Postpetition Agent, and the Debtors (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552(b), or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Postpetition Agent, the Postpetition Lenders, or the DIP Collateral. In reliance on the foregoing, the Postpetition Agent and the Postpetition Lenders have agreed to the entry of this Order.

8. Letters of Credit. For the avoidance of doubt, other than as provided in this paragraph 8, DIP Collateral, as used in this Order, shall exclude cash or cash equivalents in the amount of $2,552,276.14, as of May 31, 2017, currently held by Bank of America, N.A ("B of A") as security supporting those certain letters of credit (collectively, the "B of A L/Cs," and such cash collateral, the "B of A L/C Cash Collateral", portions of which may be returned to the Debtors with no further order of this Court from time to time upon agreement of the Debtors and B of A (and, following such return, treated as DIP Collateral for purposes of this Order), and the segregated account in which such B of A L/C Cash Collateral is held, the "B of A L/C Cash Collateral Account"), issued by B of A for the benefit of one or more of the Debtors, and fees, costs and expense and other amounts related to such letters of credit (together with the B of A L/Cs, the "B of A L/C Obligations"), pursuant to that certain Loan and Security Agreement dated as of December 15, 2011, among the Debtors and certain non-

debtor affiliates, the lenders parties thereto from time to time, B of A and Wells Fargo Bank, National Association ("Wells Fargo"), as lender and administrative agent. B of A has continued to hold the B of A L/C Collateral in connection with the continued provision and maintenance of the B of A L/Cs pursuant to (i) that certain Termination Agreement, dated December 7, 2016, between certain of the Debtors, B of A and Wells Fargo (the "Termination Agreement") and (ii) that certain letter, dated April 25, 2017 (the "B of A Cash Collateral Letter"), between B of A and A.M. Castle. Notwithstanding anything to the contrary in the Prepetition Secured Debt Documents, the Intercreditor Agreements (as defined in the Interim Cash Collateral Order and the Final Cash Collateral Order) or herein, The Debtors stipulate and agree that (i) B of A holds a valid, binding, enforceable, perfected, non-avoidable first-priority security interest in and lien on the B of A L/C Cash Collateral that is held in the B of A L/C Cash Collateral Account, which shall be a Permitted Priority Lien, (ii) B of A is entitled to continue to hold the B of A L/C Cash Collateral to support the B of A L/C Obligations consistent with the Termination Agreement and the B of A Cash Collateral Letter and (iii) solely for purposes of a "Challenge" as described in paragraph 11 of the Final Cash Collateral Order (and not, for any other purpose), the stipulations set forth in this Paragraph 8 shall be considered "Debtors' Stipulations" (as defined in the Final Cash Collateral Order), B of A shall be treated as if it was a Prepetition Secured Creditor with respect to the stipulations in this Paragraph 8, and the B of A L/C Obligations shall be treated as if they were Prepetition Secured Obligations with respect to the stipulations in this Paragraph 8. The B of A L/C Obligations shall, and shall be deemed, to include reasonable fees and expenses incurred by B of A in connection with preservation and maintenance of the B of A L/Cs (including the B of A L/C Cash Collateral) and these chapter 11 cases, including without limitation reasonable fees and expenses of counsel, and B of A shall be entitled and authorized to deduct such amounts from the B of A L/C Cash Collateral consistent with the process set forth in the Interim Cash Collateral Order and Final Cash Collateral Order, as applicable. Notwithstanding anything herein to the contrary, (i) upon the indefeasible payment in full, in cash, of all B of A L/C Obligations, any remaining B of A L/C Cash Collateral (including any remaining cash or cash equivalents in the B of A L/C Cash Collateral Account) shall be deemed to constitute Cash Collateral for purposes of this Order and (ii) the Debtors shall not transfer any cash or cash equivalents to the B of A L/C Cash

Collateral Account on or after the Petition Date without the prior written consent of the Postpetition Agent and the Required Consenting Creditors (as defined in the Restructuring Support Agreement filed with the Court by the Debtors on the Filing Date).

9. Right to Credit Bid. In connection with the sale or other disposition of all or any portion of the DIP Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k), Postpetition Agent (on behalf of the Postpetition Lenders) shall have the right to use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral.

10. Plan. Unless Postpetition Lenders consent thereto, Debtors shall not seek entry of an order confirming a plan in these Cases unless the plan provides for the Payment in Full of the Postpetition Debt in accordance with the Postpetition Documents on the earlier of (a) the effective date thereof, and (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan.

11. Application of Sale Proceeds. All proceeds (net of reasonable and documented fees and expenses consented to by Postpetition Agent) from sales or other dispositions of all or any portion of the DIP Collateral other than in the ordinary course shall be remitted to Postpetition Agent for application to the Postpetition Debt in accordance with the Postpetition Documents.

12. Waiver of Right to Return/Consent to Setoff. Debtors hereby waive their rights to: (a) return any of the DIP Collateral pursuant to Code § 546(h); (b) consent to any order permitting any claims pursuant to Code § 503(b)(9) except with the consent of the Postpetition Agent not to be unreasonably withheld; and (c) consent to setoff pursuant to Code § 553 outside the ordinary course of business except with the consent of the Postpetition Agent not to be unreasonably withheld.

13. Indemnification. Debtors shall indemnify and hold harmless Lenders in accordance with the Postpetition Documents; provided that no indemnified person will be indemnified for any cost, expense or liability to the extent determined in a final, nonappealable judgment of a court of competent jurisdiction to have resulted from the bad faith, fraud, gross negligence or willful misconduct of such indemnified person.

14. No Marshaling. No Postpetition Secured Party or any of the DIP Collateral shall be subject to the doctrine of marshaling.

15. Postpetition Charges. All Postpetition Charges are hereby approved and shall be promptly paid by Debtors in accordance with this Order and the Postpetition Documents, without need for filing an application with the Court for approval or payment of the Postpetition Charges. Invoices documenting any Postpetition Charges for any professional fees accrued after the Closing Date (as defined in the Postpetition Credit Agreement) shall be sent (redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information) to the U.S. Trustee, counsel to the Ad Hoc Lender Committee, and counsel to any Committee appointed in the Cases. Such parties shall have ten (10) days from the date of receipt of such invoices to object to the reasonableness of such amounts; provided, however that (i) such Postpetition Charges will not be subject to Court approval or U.S. Trustee guidelines, (ii) no recipient of any such payment will be required to file with respect thereto any interim or final fee application with this Court, (iii) such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine, and (iv) any such objection shall not preclude or relieve Debtors of their obligations to pay such amounts unless and until finally adjudicated by this Court.

16. Conflict. To the extent there exists any conflict among the express terms of the Interim Cash Collateral Order, the Motion, the Final Cash Collateral Order and this Order, this Order shall govern and control. For the avoidance of doubt, the existence of different events of default under this Order and the Interim Cash Collateral Order or Final Cash Collateral Order shall not be deemed to be a conflict that gives rise to this provision.

17. Modification of Stay. The automatic stay of Code § 362 is hereby modified with respect to the Postpetition Agent and Postpetition Lenders to the extent necessary to effectuate the provisions of this Order (including, without limitation, to permit Postpetition Agent and Postpetition Lenders to exercise their respective rights under Paragraph 5 above).

18. No Waiver. Neither Postpetition Agent nor any Postpetition Lender shall be deemed to have suspended or waived any of their rights or remedies under this Order, the Postpetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or

waiver is in writing, signed by a duly authorized officer of Postpetition Agent and directed to Debtors. No failure of Postpetition Agent or Postpetition Lenders to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Postpetition Agent and Postpetition Lenders thereafter to demand strict compliance and performance therewith, and no delay on the part of Postpetition Agent or Postpetition Lenders in the exercise of any right or remedy under this Order, the Postpetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy.

19. "Responsible Person." By taking any actions pursuant to this Order, neither Postpetition Agent nor any Postpetition Lender shall: (a) be deemed to be in control of the operations or liquidation of Debtors; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtors.

20. Release. Upon the Payment in Full of the Postpetition Debt in accordance with the Postpetition Credit Agreement, and prior to the release of the Postpetition Liens, the Debtors shall execute and deliver to Postpetition Agent and Postpetition Lenders a customary general release of any and all claims and causes of action that could have been asserted or raised under, in connection with, or in any way related to, the Postpetition Documents or the Cases in form and substance consistent with the release set forth in the Debtors' Prepackaged Joint Chapter 11 Plan of Reorganization filed on the Filing Date at D.I. 16.

21. Amendments. Debtors and Postpetition Agent may enter into immaterial amendments or modifications of the Postpetition Documents or any amendments or modifications to the Budget without further notice and hearing or order of this Court; provided, that such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest.

22. Binding Effect. This Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If any of the provisions of this Order are hereafter reconsidered or modified by subsequent order of this Court other than on appeal, to the maximum extent possible in accordance with the standard set forth in 11 U.S.C. § 364(e) (interpreted as if applicable other than in connection with an appeal) such reconsideration or modification shall not affect: (a) the stipulations, representations, and findings contained in

this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used or Postpetition Debt incurred prior to the effective date of such reconsideration or modification. In such event, to the maximum extent possible in accordance with the standard set forth in 11 U.S.C. § 364(e) (interpreted as if applicable other than in connection with an appeal), all such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and the Postpetition Agent and the Postpetition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein. If any of the provisions of this Order are hereafter reversed or modified on appeal, the Postpetition Agent and Postpetition Lenders will be entitled to the full benefits and protections of, and this Order shall be subject to, 11 U.S.C. § 364(e) on account of such parties acting in good faith and the Postpetition Debt being extended in good faith hereunder. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

23. Survival. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Order, including, without limitation, the rights granted Postpetition Agent and Postpetition Lenders under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Postpetition Debt is indefeasibly paid in full in cash and discharged.

Hon. Laurie Selber Silverstein
United States Bankruptcy Judge

Dated: July 6, 2017